UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MANUEL ANDERSON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:13-CV-208 |
| | § | |
| SIKORSKY SUPPORT SERVICES, INC.; | § | |
| dba SIKORSKY AEROSPACE | § | |
| MAINTENANCE, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION & ORDER

This is a race discrimination, retaliation, and racial harassment case brought by Manuel Anderson ("Plaintiff") against his employer, Sikorsky Support Services, Inc. D/B/A Sikorsky Aerospace Maintenance ("Defendant" or "Sikorsky"). Pending before the Court is Defendant's Motion for Summary Judgment (D.E. 21), to which Plaintiff has responded (D.E. 22) and Defendant has replied (D.E. 29). For the reasons set forth below, Defendant's motion is granted.

**I. Factual Background and Claims**

Plaintiff has worked for Defendant in Corpus Christi, Texas, as an aircraft mechanic in various roles and departments since July 2006, except for a short time between February 2013 and December 2013. He is still employed by Defendant.

According to Plaintiff's Original Complaint (D.E. 1), on or about May 31, 2012, Plaintiff was forced to file a police report after a coworker, Michael Duncan ("Duncan"), tailgated Plaintiff's vehicle and attacked him with a chain because of his race. He

thereafter filed a Charge of Discrimination with the Texas Workforce Commission–Civil Rights Division and the Equal Employment Opportunity Commission (EEOC) on January 14, 2013. Pl. EEOC Charge, D.E. 21-8. In the categorization section, Plaintiff's Charge states that it alleges racial discrimination between April 1, 2012 and June 30, 2012. *Id.* Plaintiff did not check the "Continuing Action" box. *Id.* In the "Particulars" portion of the Charge, Plaintiff states in the entirety: "On or about June 1, 2012, I was discriminated against because of my race, African-American. I believe that I have been discriminated against due to my race, African American[,] in violation of Title VII, of the Civil Rights Act of 1964, as amended." *Id.*

The EEOC investigated Plaintiff's Charge of Discrimination and made a preliminary determination to dismiss the charge, stating as follows:

> The available information does not support a conclusion that your race was a factor in the alleged adverse employment actions you experienced. Rather, the available evidence indicates the incident that occurred in June 2012 between you and another coworker may have been a criminal matter and not subject to the laws enforced by the EEOC.

EEOC 4/1/2013 Letter to Pl., D.E. 21-12.

On July 12, 2013, Plaintiff filed the present action complaining about the incident with Duncan, as well as alleging that other coworkers subjected him to numerous incidents of racial harassment between 2007 and 2012, and that Defendant retaliatorily denied him a lateral transfer after he complained about one of these incidents in 2007. He also claims he was retaliated against in May 2013, when a supervisor told him he could not work overtime because he had previously complained about the supervisor's

conduct.  Finally, Plaintiff claims that he was discriminated against because Defendant did not follow up on his reports of harassment and because managers hired their own family members into vacant positions instead of hiring various applicants that Plaintiff recommended.

Plaintiff has alleged causes of action for discrimination, hostile work environment, and retaliation under both Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, including violations of his right to make and enforce contracts under § 1981.  Defendant now moves for summary judgment on the grounds that all of Plaintiff's claims are barred as a matter of law.

## II. Summary Judgment Standard

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986).  To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998); *Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995). "The court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). However, the non-movant cannot avoid summary judgment by presenting only "conclusory allegations" or "unsubstantiated assertions," such as the bare allegations of a complaint, but must present sufficient evidence, such as sworn testimony in a deposition or affidavit, to create a genuine issue of material fact as to the claim asserted. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

### III. Motions to Strike

As a preliminary matter, both parties have filed objections to and/or moved to strike portions of the opposing party's summary judgment evidence. D.E. 22, 27. The Court grants Defendant's motion to strike Plaintiff's affidavit to the extent that it contradicts his prior deposition testimony. *Copeland v. Wasserstein*, 278 F.3d 472, 482 (5th Cir. 2002). Regarding the other objections, the Court has considered both the evidence proffered and the parties' objections, and to the extent the Court has regarded portions of the evidence as relevant, admissible, and necessary to the resolution of

particular summary judgment issues, it hereby overrules the evidentiary objections. To the extent the Court has not relied on other evidence about which the parties complain, the remaining objections are denied as moot.

**IV. Analysis**

  **A. Title VII**

Title VII of the Civil Rights Act of 1964 ("Title VII") prohibits discrimination by employers "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e2(a). Before a plaintiff may file suit in federal court under Title VII, he is required to file a charge of discrimination with the EEOC. 42 U.S.C. § 2000e–5(f)(1); *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002). "The scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Thomas v. Texas Dept. of Criminal Justice*, 220 F.3d 389, 395 (5th Cir. 2000); *Hernandez v. City of Corpus Christi*, 820 F. Supp. 2d 781, 793 (S.D. Tex. 2011).

   **1. Conduct Alleged to have Violated Title VII**

Plaintiff's Original Complaint alleges racial discrimination dating back to 2007 and occurring as recently as May 2013; however, because his EEOC Charge alleges discrimination between April 1, 2012 and June 30, 2012, the Court may only consider conduct alleged to have occurred during that time. *See Thomas*, 220 F.3d at 395; *Hernandez*, 820 F. Supp. 2d at 793.

Although Plaintiff's EEOC Charge specifically references June 1, 2012, that date does not appear in his Original Complaint. The only allegations in Plaintiff's Original Complaint concerning the three-month period in question are as follows:

> 20. Over a two-month period beginning on or about April 1, 2012, Plaintiff was subjected to offensive and discriminatory conduct on account of his race.
>
> 21. Plaintiff spoke to Mr. Marcias about co-workers who had dragged a hangman's noose behind their golf cart in the workplace. Mr. Marcias acknowledged what Plaintiff said to him and asked Plaintiff for an opportunity to handle the problem without Plaintiff filing an EEOC complaint.
>
> 22. After the meeting with Mr. Marcias, months passed by without any explanation about the investigation or its results. Instead, on or about May 31, 2012, plaintiff had to file a police incident report when one of his coworkers, Michael Duncan[,] tailgated Plaintiff's vehicle and attacked Plaintiff with a chain. This was the latest incident Plaintiff had to endure as part of the pattern of discriminatory treatment and harassment on account of his race.

D.E. 1 ¶¶ 20–22.

### 2. Plaintiff's Title VII Discrimination Claim

#### a. Legal Standard

To establish a prima facie case of racial discrimination under Title VII, the plaintiff must show: (1) he belongs to a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) he was replaced by someone outside the protected class, or that other similarly situated persons were treated more favorably. *See Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). An "adverse employment action" refers to an action that affects the "terms, conditions, or

privileges of employment." *See Young v. City of Houston*, 906 F.2d 177, 182 (5th Cir. 1990). "In [the Fifth] [C]ircuit, a plaintiff must show that the employer made an ultimate employment decision to establish that the plaintiff has suffered an adverse employment action." *Williams v. U.S. Dep't of Navy*, 149 Fed. App'x 264, 269 (5th Cir.2005) (citing *Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528, 531 (5th Cir. 2003)). Ultimate employment decisions include hiring, discharging, promoting, compensating, and granting leave. *Id.*

A plaintiff may present his case of discriminatory intent by direct or circumstantial evidence, or both. *Russell v. McKinney Hospital Venture*, 235 F.3d 219, 222 (5th Cir. 2000). "Direct evidence" is evidence that, if believed, is sufficient to prove discriminatory intent without inference, presumption, or resort to other evidence. *Haas v. Advo Syst., Inc.*, 168 F.3d 732, 733–34 (5th Cir. 1999). If the plaintiff produces only circumstantial evidence of discrimination, the court's inquiry is guided by the *McDonnell Douglas* burden shifting paradigm. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* approach, the allocation of the burden of production and the order for presentation of proof is as follows: (1) the plaintiff must first establish a prima facie case of discrimination; (2) if the plaintiff meets his burden, then the burden of production shifts to the defendant to produce evidence of a legitimate nondiscriminatory reason for its actions; and (3) if the defendant produces a legitimate reason, then the presumption of discrimination vanishes, and the plaintiff must demonstrate a genuine issue of material fact that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Reeves v.*

*Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 142–43 (2000). If the plaintiff employee cannot establish a prima facie case, then the defendant need not present any reason for its action. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

**b. Analysis**

There is no dispute that Plaintiff belongs to a protected class (African American) or that he is qualified for his position. However, Plaintiff has failed to present any evidence that he suffered an adverse employment action between April 1, 2012 and June 30, 2012, or at any other time, for that matter. Plaintiff also failed to present any evidence that he was replaced by a non-African American or that other similarly-situated persons were treated more favorably. Because Plaintiff has failed to meet his burden on summary judgment of presenting sufficient evidence to establish a prima facie case of employment discrimination under Title VII, this claim is **DISMISSED**.

**3. Plaintiff's Title VII Hostile Work Environment Claim**

Plaintiff's hostile work environment claim fails as a matter of law because he did not identify such a claim before the EEOC and is thus precluded from raising it now. One of the central purposes of an EEOC charge is to place an employer on notice of "the existence and nature of the charges against [it]." *EEOC v. Shell Oil Comp.*, 466 U.S. 54, 77 (1984); *see also Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd.*, 40 F.3d 698, 711–12 (5th Cir. 1994); *Young*, 906 F.2d at 179. Plaintiff did not include the words "harassment" or "hostile work environment" in his EEOC Charge, and the Charge otherwise fails to set forth allegations that any coworkers bullied, teased, belittled, or otherwise treated him negatively based on his race, or that Defendant did not follow up

on his reports of harassment. Therefore, Plaintiff may not bring his hostile work environment claim now. *See Evans-Rhodes v. Northwest Diagnostic Clinic, P.A.*, 2014 WL 645361, *3, *5 (S.D. Tex. Feb. 19, 2014) (dismissing hostile work environment claim for failure to exhaust administrative remedies where EEOC charge identified a single race-related comment, and "[t]here is nothing in that Charge itself that would suggest that the EEOC needs to investigate whether a hostile work environment existed or indicate to Defendant that it might have a problem more pervasive than one insensitive employee"); *Sosebee v. Texas Alcoholic Beverage Comm'n*, 906 F. Supp. 2d 596, 601 (N.D. Tex. 2012) (recognizing that discrimination and harassment are "distinct claims" and dismissing harassment claim for failure to exhaust administrative remedies where charge included only discrimination).

Accordingly, Plaintiff's hostile work environment claim under Title VII is **DISMISSED**.

### 4. Plaintiff's Title VII Retaliation Claim

Plaintiff's EEOC Charge similarly fails to include the term "retaliation" and contains no allegations even hinting at the possibility he might raise such a claim in the future. Because Plaintiff did not include a retaliation claim in his EEOC Charge, he is barred from asserting it now. *See Shell Oil Co.*, 466 U.S. at 77; *Young*, 906 F.2d at 179; *Nat'l Ass'n of Gov't Employees*, 40 F.3d at 711–12.

Accordingly, Plaintiff's retaliation claim under Title VII is **DISMISSED**.

**B. 42 U.S.C. § 1981**

Like Title VII, 42 U.S.C. § 1981 also prohibits employment discrimination on the basis of race. *Johnson v. Railway Express Agency*, 421 U.S. 454, 459–60 (1975). Specifically, § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Claims of race-based discrimination brought under § 1981 are governed by the same framework applied to claims of employment discrimination brought under Title VII. *See Harrington v. Harris*, 118 F.3d 359, 367 (5th Cir. 1997) (citing *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n.2 (5th Cir. 1996)).

A plaintiff's claims under § 1981 are subject to a four-year statute of limitations under the "catch all" limitations period for federal claims, 28 U.S.C. § 1658. *See Jones v. R.R. Donnelley & Sons Company*, 541 U.S. 369, 382–84 (2004); *Johnson v. Crown Enterprises, Inc.*, 398 F.3d 339, 341 (5th Cir. 2005). Plaintiff filed this lawsuit on July 12, 2013; accordingly, any conduct that occurred before July 12, 2009, is not actionable.

**1. Conduct Alleged to Have Violated § 1981**

Plaintiff has complained about a number of alleged incidents of racial harassment and discrimination in his complaint and deposition testimony. According to the facts set forth in Plaintiff's Original Complaint, the following conduct, occurring after July 12, 2009, gives rise to his claims under § 1981:

> In April 2011, Plaintiff was called the "N" word by a co-worker, Albert Morales.
>
> In February 2012, an employee put a sheet of paper with the "N" word in large letters under a lunch box belonging to another black employee, Steve Buchanan.
>
> Over a two-month period beginning on or about April 1, 2012, Plaintiff was subjected to offensive and discriminatory conduct on account of his race.
>
> Plaintiff spoke to Mr. Marcias about co-workers who had dragged a hangman's noose behind their golf cart in the workplace. Mr. Marcias acknowledged what Plaintiff said to him and asked Plaintiff for an opportunity to handle the problem without Plaintiff filing an EEOC complaint.
>
> After the meeting with Mr. Marcias, months passed by without any explanation about the investigation or its results. Instead, on or about May 31, 2012, plaintiff had to file a police incident report when one of his coworkers, Michael Duncan[,] tailgated Plaintiff's vehicle and attacked Plaintiff with a chain. This was the latest incident Plaintiff had to endure as part of the pattern of discriminatory treatment and harassment on account of his race.
>
> On or about May 15, 2013, Plaintiff was told by his manager, Victor Rhodes, that Plaintiff would no longer be allowed overtime because Plaintiff wrote grievances against the management.

D.E. 1 ¶¶ 17–22.

In his deposition, Plaintiff testified to two additional incidents after July 12, 2009. In January 2012, Plaintiff and two coworkers were left at the airport in Las Cruces, New Mexico. And in the Spring of 2012, he overheard Jay O'Brien, a leadman, use the "N" work toward another employee.

There is insufficient evidence that the incidents in January 2012 and May 31, 2012 were racially motivated. *See Grimes v. Texas Dept. of Mental Health and Mental Retardation,* 102 F.3d 137, 139–40 (5th Cir. 1996) (conclusory allegations, unsubstantiated assertions, and subjective beliefs are insufficient to support a discrimination claim).

### 2. Plaintiff's § 1981 Discrimination Claim

#### a. Legal Standard

To demonstrate a prima facie case of employment discrimination under § 1981, a plaintiff must show that: (1) he is a member of a racial minority; (2) his employer had an intent to discriminate on the basis of race; and (3) the discrimination concerned "the making and enforcing of a contract." *See Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997) (citing *Green v. State Bar of Texas*, 27 F.3d 1083, 1086 (5th Cir. 1994)).

#### b. Analysis

The standard of proof for Title VII discrimination claims also applies to § 1981 claims. *Roberson v. Alltel Info. Services*, 373 F.3d 647, 651 (5th Cir. 2004). As the Fifth Circuit has stated, "It is the rule of this Court that consideration of an alternative remedy brought under § 1981 is necessary only if its violation can be made out on grounds different from those available under Title VII." *Page v. U.S. Indus., Inc.*, 726 F.2d 1038, 1042 n.2 (5th Cir. 1984). Because Plaintiff has not alleged facts of intentional racial discrimination distinct from those necessary to allege a Title VII cause of action, Plaintiff's employment discrimination claim under § 1981 is **DISMISSED** for the same

reason the racial discrimination claim was dismissed under Title VII. Plaintiff failed to present evidence that he suffered an adverse employment action.

### 3. Plaintiff's § 1981 Retaliation Claim

#### a. Legal Standard

To present a prima facie case of retaliation under § 1981, an employee must show that: (1) he engaged in an activity protected by statute; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). If the employee "succeeds in making a prima facie case, the burden then shifts to the [employer] to proffer a legitimate rationale for the underlying the employment action." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004). "If the [employer] makes this showing, the burden shifts back to the [employee] to demonstrate that the employer's articulated reason for the employment action was a pretext for retaliation." *Id.*

#### b. Analysis

Giving rise to his § 1981 retaliation claim, Plaintiff claims that in May 2013, his supervisor at the time told him he could not work overtime because he had previously made written complaints about the supervisor's conduct.

Plaintiff testified during his deposition that he was not employed by Defendant in May 2013. Pl. Dep., D.E. 21-1 at 28:13–29:3. After Defendant lost its maintenance contract at the Naval Air Station in February 2013, Plaintiff continued to work at that location as an aircraft mechanic, but he was employed by M7 Aerospace during that time.

*Id.* Defendant then re-hired Plaintiff in December 2013, when it regained the maintenance contract. *Id*. at 30:8-20.

Defendant cannot be held liable for any alleged retaliation in May 2013, because it was not Plaintiff's employer at the time. Because Plaintiff has failed to establish a prima facie case of retaliation under § 1981, this claim is **DISMISSED**.

### 4. Plaintiff's § 1981 Hostile Work Environment Claim

#### a. Legal Standard

A plaintiff who asserts a hostile work environment claim under § 1981 must establish that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action. *See Mendoza v. Bell Helicopter*, 548 Fed. App'x 127, 128–29 (5th Cir. 2013). "For harassment to be sufficiently severe or pervasive to alter the conditions of the victim's employment, the conduct complained of must be both objectively and subjectively offensive. Thus, not only must the victim perceive the environment as hostile, the conduct must also be such that a reasonable person would find it to be hostile or abusive." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007) (internal citations omitted).

When examining the totality of the circumstances, a court should focus on such factors as: (1) the frequency of the conduct; (2) its severity; (3) the degree to which the conduct is physically threatening or humiliating; and (4) the degree to which the conduct unreasonably interferes with an employee's work performance. *Id.; see also Septimus v.*

*Univ. of Houston*, 399 F.3d 601, 611 (5th Cir. 2005). "'A recurring point in [Supreme Court] opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'" *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (alteration in *Shepherd*)).

### b. Analysis

As set forth above, Plaintiff states that the following conduct by his coworkers occurring after July 12, 2009, gives rise to his hostile work environment claim: (1) in April 2011, co-worker Morales called Plaintiff the "N" word; (2) in January 2012, Plaintiff found an anonymous note with the "N" word written on it that another employee placed under the lunch box of one of Plaintiff's co-workers; (3) in April 2012, Plaintiff did not witness but heard about an incident when some employees dragged a "hangman's noose" behind their golf cart; and (4) in Spring 2012, Plaintiff overheard Jay O'Brien, a leadman, use the "N" word toward another employee.

Viewing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to establish a prima facie case of race discrimination under a hostile work environment theory. The complained-of conduct occurred sporadically over a year and was not pervasive. Moreover, the incidents concerning the lunchbox note and hangman's noose were not directed at Plaintiff. *See Johnson v. TCB Const. Co., Inc.*, 334 Fed. App'x 666, 670–71 (5th Cir. 2009) (citing *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 903 (7th Cir. 2005) ("'Second-hand' harassment, although relevant, [is] less

objectionable than harassment directed at the plaintiff.")); *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 760 (8th Cir. 2004) (sporadic racial slurs overheard by plaintiff regarding individuals other than the plaintiff, made no more than once per month over a two-year period, were insufficient to create hostile work environment).

In *Grant v. UOP, Inc.*, 972 F. Supp. 1042, 1047 (W.D. La. 1996), *aff'd*, 122 F.3d 1066 (5th Cir. 1997), the court found that five separate utterances of the "N" word directly to the plaintiff were insufficient to establish a hostile work environment claim; here, Plaintiff alleges that he was directly called the "N" word on only one occasion.

Because Plaintiff has failed to meet his burden on summary judgment of presenting sufficient evidence to establish a prima facie hostile work environment claim under § 1981, this claim is **DISMISSED**.

## V. Conclusion

For the reasons set forth above, Defendant's Motion for Summary Judgment (D.E. 21) is **GRANTED**, and this action is **DISMISSED**.

ORDERED this 5th day of November, 2014.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE